ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| Ameresco Select, Inc. | ) ASBCA Nos. 59638, 60136, 60526 |
| | ) |
| Under Contract No. DE-AM36-98GO100351 | ) |
| Delivery Order No. D.O. N62583-10-F-0315 | ) |

APPEARANCES FOR THE APPELLANT:      James D. Bachman, Esq.
                                     Ron R. Hutchinson, Esq.
                                       Doyle & Bachman LLP
                                       Arlington, VA


APPEARANCES FOR THE GOVERNMENT:      Craig D. Jensen, Esq.
                                       Navy Chief Trial Attorney
                                     Robyn L. Hamady, Esq.
                                       Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE PAUL ON
THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

These appeals arose pursuant to a delivery order issued under an indefinite delivery/indefinite quantity (ID/IQ) contract awarded to a predecessor company of appellant, Ameresco Select, Inc. (ASI). The purpose of this design/build contract was an energy savings performance project at Naval Station, Rota, Spain. ASI filed what is described as a "partial motion for summary judgment." The Navy subsequently filed a cross-motion for summary judgment. Because the voluminous, underlying record is replete with issues of disputed material facts, we deny the motions.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION[*]

The Department of Energy (DOE) awarded ID/IQ contract No. DE-AM36-98GO10351 to appellant's predecessor company on September 14, 1998 (R4, tab 1). Through Modification M010 to the contract, the contractor's name was changed to ASI on official contractual documents (R4, tab 7). As a result of Modification M005, executed on August 20, 2002, the contract was revised in its entirety. Pursuant to the novated contract, ASI was to provide energy savings performance contracting services "for federal Government facilities located in the United States and its territories, and for federally-owned facilities located in overseas locations, although not in the United States and its territories" (R4, tab 2 at GOV0089). The vehicles through which these energy

---

[*] We provide this factual background solely for purposes of resolving the motions.

savings were to be achieved were referred to throughout the contract as Energy Conservation Measures (ECM's) (*id*. at GOV0084). The services to be furnished by ASI were "ordered by issuance of delivery orders (DO's) by an authorized contracting officer (CO) for a United States Government federal agency" (*id*. at GOV0090).

The contract described the types of ECMs variously as boiler plant improvements, chiller plant improvements, building automation systems, HVAC, lighting improvements, building envelope modifications, water and steam distribution systems, electric motors and drives, refrigeration, distributed generation, and renewable energy systems (*id* at GOV0094-96).

Once a DO was negotiated and awarded, ASI was required to prepare and submit a design and construction package for review and approval "prior to starting ECM installation in accordance with the delivery order reporting requirements checklist." Further, the package was to be certified by a registered engineer to assure compliance with applicable building codes and Federal agency design standards (*id* at GOV0100). The contract specifically set forth these codes and standards in a lengthy list that included, *inter alia,* OSHA regulations, National Fire Protection Standards, and the Army Corps of Engineers Safety Manual (*id* at GOV0101-02). Specifically, with respect to environmental protection, ASI had to comply with applicable federal, state and local laws and with the applicable regulations and standards regarding environmental protection (*id* at GOV0103). In addition, ASI was responsible for maintenance and operation of all ECM's installed (*id*. at GOV0104-06).

As awarded, the contract incorporated by reference a host of standard contractual clauses, including Federal Acquisition Regulation (FAR) 52.233-1, DISPUTES (DEC 1998), ALTERNATIVE I (DEC 1991); and FAR 52.243-1, CHANGES-FIXED-PRICE (AUG 1987) ALTERNATIVE I (APRIL 1984) (*id*. at GOV0150, GOV0153).

ASI presented its initial proposal for the environmental savings performance project at U.S. Naval Station, Rota, Spain on October 31, 2007 (R4, tab 8). At the Navy's request, ASI developed a so-called "Phase I" package which estimated energy savings over a 23-year performance term to be $60,611,983 (*id*. at GOV0297). Performance under the DO was scheduled to commence on October 30, 2009 (*id* at GOV0307). The appropriate authorities at Rota reviewed ASI's initial proposal and, on August 25, 2008, requested that the Naval Facilities Engineering Command (NAVFAC) "provide Ameresco with the notice of intent to award a delivery order so they may proceed to a Detailed Energy Survey (DES) and final proposal according to the ECM listed in this letter and the comments submitted by Navy reviewers" (R4, tab 9 at GOV0406). On November 16, 2008, NAVFAC's CO informed ASI of its notice of intent to award a DO for the Rota project. He thus authorized ASI to undertake a Detailed Energy Survey (DES) (R4, tab 10 at GOV0410). On September 15, 2009, ASI submitted its initial DES voluminous proposal to NAVFAC (R4, tab 11). On

2

November 30, 2009, ASI transmitted its final DES proposal (R4, tab 12). The implementation price (excluding DES) was $8,333,773 and the expected energy savings were $19,075,412 (*id* at GOV0634). On January 22, 2010, ASI submitted a detailed addendum to the DES (R4, tab 13).

Also, on January 22, 2010, the Navy's CO executed DO N62583-10-F-0315 for the Rota project in a fixed-price amount of $17,215,849 (R4, tab 14). On June 23, 2010, the CO forwarded to ASI a notice to proceed with the Rota project (R4, tab 16). On July 1, 2010, ASI submitted its 35 percent design (R4, tab 17). A major portion of ASI's project design related to decentralization of the base's heating system. In its DES, ASI proposed to provide oil fired boilers to replace the existing hot water heat exchangers. This necessitated the installation of outdoor fuel oil storage tanks (R4, tab 12 at GOV0658). In its design drawings for the 35 percent submission, ASI stated:

> Locate fuel oil tank within 50'- 0" of oil burning equipment and within 150'- 0" of fuel truck access. Fuel oil tank may be more than 5'- 0" to any building.

(App. ex. 4)

ASI's 35 percent design submission was completely silent regarding fire protection systems, antiterrorism force protection standards (ATFP), and aesthetic requirements (R4, tab 17). NAVFAC's resident officer in charge of the contract (ROICC) approved ASI's 35 percent submittal as noted, on July 26, 2010. His response was also completely silent regarding the fire protection systems or aesthetic conditions; however, the ROICC did require that ASI include a section in its Basis of Design, specifically covering "Antiterrorism and Force Protection (ATFP) . . ." (R4, tab 18 at GOV0881-82)

On August 31, 2010, ASI forwarded its 95 percent design submission to the ROICC. It did once again show the location of the fuel tanks, but did not discuss whether they were in compliance with ATFP requirements. As in the prior submission, this document was silent regarding fire protection and aesthetic requirements (R4, tab 19). The ROICC forwarded his reviewer comments on September 8, 2010. He made no mention of fire protection or aesthetic requirements; however, he did question whether the location of the fuel tanks met ATFP requirements (R4, tab 20 at GOV0893-94).

ASI transmitted its 100 percent design submittal on September 30, 2010 (R4, tab 21). It did not specifically address ATFP requirements regarding the location of the fuel tanks (*id* at GOV1093). It also was silent regarding fire protection and aesthetic requirements (*id*. *passim*). NAVFAC forwarded a set of reviewer comments on October 15, 2010. It stated for the first time that fuel oil tanks would have to be relocated (R4, tab 22 at GOV1170). In its initial response to the reviewer's comments, ASI stated

3

that the location of the fuel oil tanks "meets ATFP" (R4, tab 23 at GOV1180). In an attempt to demonstrate that it was in compliance with ATFP requirements, ASI included a detailed section in its response which analyzed standoff distance from existing buildings. It thus raised a material factual issue in this regard (*id* at GOV1182-85).

On December 22, 2010, NAVFAC, for the first time, raised the issue of compliance with fire codes (R4, tab 24 at GOV1215). In a response dated April 14, 2011, ASI stated that it had included fire alarm and fire sprinkler systems in its revised design (R4, tab 29 at GOV1301). In its submittal review of July 1, 2011, NAVFAC stated that, despite ASI's efforts, its "Fire Protection analysis" was still incomplete (R4, tab 30 at GOV1332). In a memorandum dated July 5, 2011, the CO stated, in part, that the boiler decentralization design was not compliant with base regulations (R4, tab 31).

In a memorandum dated July 27, 2011, ASI aggressively disagreed with the CO's comments regarding design deficiencies. It stated that its efforts had "been severely constrained by the Navy" because of an "ever-changing comment and review process." It also contended that because of these problems it had encountered "numerous delays and rework." ASI further noted that the Navy had approved both its 35 percent and 95 percent submittals and that it was not until the 100 percent design had been submitted that the Navy "first raised numerous comments and deficiencies based on standards and guidelines that were not included in the original design intent." ASI concluded by stating that the Navy's failure to raise these issues earlier violated its duty to cooperate, delayed the contract and increased ASI's cost of performance (R4, tab 32 at GOV1349-50). In a proposal for modification to the DO, dated November 2, 2012, ASI stated that it was entitled to a sum of $1,800,852 for "delay–related and design changes costs." It also asserted that during "the final design review phase, the Navy introduced additional design requirements to meet Anti-Terrorism Force Protection Standards, Base Exterior Architectural Plan, and Fire Protection Standards" (R4, tab 44 at GOV1767-68).

In an e-mail dated November 29, 2012, NAVFAC requested that it resubmit its proposal as a certified request for equitable adjustment (R4, tab 47 at GOV1940). In a letter dated November 30, 2012, ASI complied with the Navy's request, albeit with a defective certification (R4, tab 48 at GOV1942). On July 30, 2014, the CO denied certain elements of ASI's claims and declined to rule on other issues (R4, tab 50). ASI appealed this decision as a deemed denial and filed a notice of appeal on October 22, 2014 (R4, tab 51).

## DECISION

It is well settled that a party may obtain a grant of summary judgment if there are no genuine disputes of material fact and it is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A "material fact" is one that may affect the outcome of an appeal. *Anderson v. Liberty*

4

*Lobby, Inc*., 477 U.S. 242 (1986). Here, ASI contends that the Navy constructively changed the contract and delayed its performance when it unilaterally added or modified certain requirements at the end of the design phase. The principal requirements at issue, according to ASI, are fire protection systems and enhanced ATFP measures. (App. br. at 5, 24) The Navy responds that their requirements were part of the original DO and that ASI is not entitled to additional costs (gov't resp. br. at 1-2).

We disagree with both parties because, on the present state of this record, there is insufficient clarity to grant summary judgment. Regarding the extensive fire protection system required by the Navy during its 100 percent design review, there is no question that such a system was not included in ASI's DES. Further, the Navy did not raise any issue in this regard in either its 35 percent or 95 percent design reviews. This raises at least the factual inference that such an elaborate system was not required.

As for the ATFP distance requirements, the Navy did generally raise this issue at its 35 percent and 95 percent design reviews. But ASI has presented detailed evidence that it complied with the distance requirements. Thus, it raises a material factual dispute regarding its compliance.

CONCLUSION

The parties cross-motions are denied.

Dated: July 11, 2022

MICHAEL T. PAUL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59638, 60136, 60526, Appeals of Ameresco Select, Inc., rendered in conformance with the Board's Charter.

Dated:  July 11, 2022

_____
PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals